UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NOE EXCEQUIEL ROLDAN ROLDAN, <br><br> Petitioner, <br><br> v. <br><br> ANTONE MONIZ, Superintendent of Plymouth County Correctional Facility; DAVID WESLING, Field Office Director of U.S. Immigration and Customs Enforcement, Enforcement Removal Operations, Boston Field Office; PATRICIA HYDE, Acting Field Office Director; TODD M. LYONS, Acting Director U.S. Immigration and Customs Enforcement; KRISTI L. NOEM, U.S. Secretary of Homeland Security; PAMELA BONDI, U.S. Attorney General. <br><br> Respondents. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * Civil Action No. 1:26-cv-10017-IT <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * |

MEMORANDUM & ORDER

January 21, 2026

TALWANI, D.J.

Petitioner Noe Excequiel Roldan Roldan is a Ecuadorian national residing in Massachusetts. Resp'ts' Opp'n, Ex. 1 at 1 [Doc. No. 6-1], Ex. 4 at 2 [Doc. No. 6-4] (listing Westborough, Massachusetts address). Petitioner was arrested by U.S. Immigration and Customs Enforcement ("ICE") on January 3, 2026. Resp'ts' Opp'n 2 [Doc. No. 6]. Petitioner alleges, and Respondents agree, that, "Petitioner is currently detained at Plymouth County Correctional Facility pursuant to ICE custody." Pet. ¶ 12 [Doc. No. 1]; Resp'ts' Opp'n 2 [Doc. No. 6].

I.  **Background**

On January 5, 2026, Petitioner filed a Petition for Writ of Habeas Corpus [Doc. No. 1] with this court. Petitioner contends that ICE's detention of him, denial of a bond hearing, and confiscation of his personal property violate Petitioner's due process rights under the Fifth

Amendment. Petitioner asserts that he is a member of the "Guerra-Orellana [sic] class" which entitles him to an individualized bond hearing. Pet. ¶¶ 5–4 [Doc. No. 1]; see Guerrero Orellana v. Moniz, No. 25-cv-12664-PBS, 2025 WL 3687757, at *10 (D. Mass. Dec. 19, 2025). Petitioner asks this court to order either his "immediate release from ICE custody[,]" his release on recognizance, or a bond hearing "before a neutral adjudicator." Pet. 7 [Doc. No. 1]. Petitioner also seeks an order compelling Respondents to "produce a complete written inventory of all personal property seized from Petitioner" and return such property. Id.

Respondents assert that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(1). Resp'ts' Opp'n 10 [Doc. No. 6]. Petitioner was apprehended at the U.S. border in Laredo, Texas on or around June 12, 2024, after which he was determined to be inadmissible. Id. Ex. 1 at 1 [Doc. 6-1]. DHS placed Petitioner into expedited removal proceedings, pursuant to 8 U.S.C. § 1225(b)(1). Id. After Petitioner stated his intent to apply for asylum, DHS determined that Petitioner presented a credible fear of return to Ecuador, vacated the expedited removal order, and released Petitioner on parole on August 7, 2024. Id. Ex. 2 at 4 [Doc. No. 6-2]; Ex. 3 at 1 [Doc. No. 6-3]; Ex. 4 at 1–2 [Doc. No. 6-4]. DHS ordered him to appear in person at the Burlington, Massachusetts field office September 26, 2024. Id. Ex. 4 at 1–2 [Doc. No. 6-4].

Respondents assert that, because Petitioner's parole expired on August 7, 2025, he has no authorization to remain in the country and is subject to expedited removal proceedings. Resp'ts' Opp'n 11 [Doc. No. 6]. Respondents maintain that 8 U.S.C. § 1225 mandates detention during the pendency of Petitioner's removal proceedings, even if he wishes to restate his fear of return to Ecuador and apply for asylum. Id. at 10–11. Respondents also deny that Petitioner is a member of the Guerrero Orellana class because DHS has placed him in expedited removal

2

proceedings. Id. 13–14. Finally, Respondents contend that, as an "arriving" noncitizen, Petitioner lacks constitutional rights. Id. 14–19.

## II. Analysis

Regarding the applicability of 8 U.S.C. § 1226, the court finds that Petitioner is not a Guerrero Orellana classmember. He was "paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) at the time of [his] entry]" and is therefore expressly excluded from the class. Guerrero Orellana v. Moniz, 2025 WL 3033769, at *14 (D. Mass Oct. 30, 2025.

Taking Respondents' remaining arguments in the reverse, the court finds that a protected liberty interest arose when Respondents released Petitioner on parole on August 7, 2024. See Morrissey v. Brewer, 408 U.S. 471, 481–82 (1972) (describing a parolee's interest "in his continued liberty."). When Respondents determined that Petitioner had a credible fear of return to Ecuador and released him, Petitioner had a reasonable expectation that he would be entitled to retain his liberty and remain out of immigration custody. See Perry v. Sindermann, 408 U.S. 593, 601–03 (1972) (finding reliance on governmental representations may establish a legitimate claim of entitlement to a constitutionally-protected interest). The Fifth Amendment's Due Process Clause extends to all persons in the United States, regardless of status, see A.A.R.P. v. Trump, 605 U.S. 91, 94 (2025), and Petitioner's "liberty is valuable and must be seen as within the protection of" due process, Morrissey, 408 U.S. at 482.

Having established that Petitioner is due some measure of process before being "deprived of . . . [his] liberty," U.S. CONST. amend. V., the court addresses how much process should be afforded. See Mathews v. Eldridge, 424 U.S. 319 (1976); Hernandez-Lara v. Lyons, 10 F.4th 19, 27–28 (1st Cir. 2021) (applying Mathews balancing test in context of noncitizen detention).

In Mathews, the Supreme Court held that "identification of the specific dictates of due process generally requires consideration of three distinct factors":

3

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334–35.

Regarding the first factor, the court finds that Petitioner's liberty interest is fundamental. See Zadvydas v. Davis, 533 U.S. 678, 695 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). With respect to the second, the risk of an erroneous deprivation of Petitioner's liberty is high where he has not received a bond or custody redetermination hearing. The decision to grant parole is within DHS's discretion, affording no additional procedural safeguards. See Tenemasa-Lema v. Hyde, __ F. Supp.3d __, 2025 WL 3280555, at *4 (D. Mass. Nov. 25, 2025). Finally, regarding the third factor, the court recognizes that "[t]he prompt execution of removal orders is a legitimate governmental interest, which detention may facilitate." Hernandez-Lara, 10 F.4th at 32. However, the administrative cost of providing a bond hearing is relatively minimal. See Hilario M.R. v. Warden, Mesa Verde Det. Ctr., 2025 WL 1158841, at *9 (E.D. Cal. Apr. 21, 2025) (citing cases).

DHS determined in 2024 that Petitioner did not present a flight risk or danger to his community in 2024 when he was released on parole. Respondents do not assert that Petitioner has presented a flight risk or danger for the past 18 months that he has lived in Massachussetts. A bond hearing would allow Repsondents, at minimal cost to DHS, to determine whether Petitioner's re-detention is necessary. Respondents concur that, should the court provide relief, "the appropriate remedy" is "a bond hearing." Resp'ts' Opp'n 19 [Doc. No. 6]. On balance, the court finds that the Mathews factors weigh in favor of relief, that Petitioner's detention without a

bond hearing violates his due-process rights, and that a bond hearing is an appropriate and minimally invasive additional procedure to ensure that right. 424 U.S. at 334.

The court need not address Respondents' remaining arguments given that due process demands an individualized bond hearing to determine whether Petitioner's re-detention is justified. Regarding Petitioner's request that the court address DHS's alleged seizure of his personal property, this court lacks jurisdiction to address such claims on a habeas petition. See 28 U.S.C. § 2241.

### III.   Conclusion

The Petition for Writ of Habeas Corpus [Doc. No. 1] is therefore GRANTED. Roldan Roldan must be provided a bond hearing no later than January 28, 2026, or, if the immigration judge declines to conduct a bond hearing, Respondents shall so advise the court by that date so that this court may conduct the bond hearing. Any decision by the immigration judge to retain Roldan Roldan in custody following a bond hearing shall set forth the reasons for the continued detention.

IT IS SO ORDERED.

January 21, 2026                                            /s/ Indira Talwani
                                                            United States District Judge